955 F.2d 1181
 Claude ROBINSON, Petitioner,
v.
MISSOURI MINING COMPANY and Wausau Insurance Company;
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
 No. 90-1347.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1991.
Decided Feb. 4, 1992.
 
 Bradford A. Brett, Mexico, Mo., argued, for petitioner.
 Mark E. Solomons, Washington, D.C., argued (Laura Metcoff Klaus, on brief), for respondents.
 Before LAY,* Chief Judge, MAGILL and BEAM, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 On December 5, 1979, Claude Robinson filed a claim for black lung benefits with the Department of Labor under the Black Lung Benefits Act (Act), 30 U.S.C. §§ 901-945 (1988). After a hearing on October 5, 1984, an Administrative Law Judge denied Robinson's claim. The Benefits Review Board affirmed the ALJ's decision on February 28, 1990. Robinson appeals. We affirm.
 
 I. BACKGROUND
 
 2
 A lengthy review of the evidence presented at Robinson's hearing before the ALJ is not necessary for our purposes; a short discussion of the ALJ's reasoning and the BRB's affirmance will be sufficient. Applying the standards governing eligibility for black lung benefits contained in 20 C.F.R. § 727.203, the ALJ initially found that sufficient evidence existed to invoke an interim presumption of Robinson's total disability due to pneumoconiosis (black lung). Robinson had worked as a miner for thirteen years and ventilatory studies, blood gas studies, and medical opinion raised the interim presumption under section 727.203(a)(2), (3), (4). The ALJ found that conflicting x-ray evidence failed to raise the interim presumption under section 727.203(a)(1).
 
 
 3
 Although sufficient evidence existed to raise the interim presumption, the ALJ ultimately concluded that the evidence as a whole rebutted the presumption under section 727.203(b)(2), (3), (4). The ALJ found that Robinson was able to do his usual coal mine work or comparable and gainful work, that Robinson's disability did not arise out of coal mine employment, and that the medical evidence indicated that Robinson did not have pneumoconiosis.
 
 
 4
 In reaching his final decision, the ALJ credited the opinion of one examining physician, Dr. Lloyd Hollinger, over that of another, Dr. Max Gutensohn. In Dr. Hollinger's view, Robinson was not suffering from pneumoconiosis, but rather from "chronic obstructive pulmonary disease of a very mild degree [that] can be solely related to his smoking history." Hollinger Report, Sept. 26, 1980, at 2. Dr. Gutensohn, in contrast, believed that "[i]t would appear, in as much as [Robinson] has not been exposed to any other irritant except for smoking for some periods of time, that he is disabled due to previous coal mine employment." Gutensohn Report, Sept. 10, 1984, at 2. The ALJ relied on Dr. Hollinger's opinion because it was more detailed, less tentative, and included a specific finding that Robinson could return to his work as a caterpillar operator whereas Dr. Gutensohn's opinion failed to address this issue.
 
 
 5
 Robinson appealed the ALJ's decision pro se and the BRB construed his arguments as an assertion that the ALJ's order was not supported by substantial evidence on the record as a whole. The BRB affirmed the ALJ's order, concluding that substantial evidence supported the ALJ's finding concerning rebuttal of the interim presumption under section 727.203(b)(2). In particular, the BRB held that the ALJ's decision to credit Dr. Hollinger's opinion over Dr. Gutensohn's on the issue of whether Robinson was able to work as a caterpillar operator was rational. Because rebuttal of the interim presumption under section 727.203(b)(2) was sufficient to uphold the ALJ's decision, the BRB declined to review the ALJ's other findings.
 
 II. DISCUSSION
 
 6
 Our review of the BRB's order is very limited. The BRB cannot set aside the ALJ's factual findings unless the findings are not supported by substantial evidence in the record as a whole. See 30 U.S.C. § 932(a) (1988); 33 U.S.C. § 921(b)(3) (1988). If the ALJ's findings satisfy this requirement, the BRB must affirm even though it might have reached a different conclusion than the ALJ were it the fact-finder. E.g., Brown v. Director, Office of Workers' Compensation Programs, 914 F.2d 156, 158 (8th Cir.1990). In particular, the decision to credit one of two conflicting medical opinions as better documented and reasoned belongs to the ALJ as fact-finder. See Phillips v. Director, Office of Workers' Compensation Programs, 768 F.2d 982, 984 (8th Cir.1985). Our role on appeal is merely to assure that the BRB adhered to the proper standard of review. To fulfill this role, we examine the ALJ's findings under the same standard. E.g., Brown, 914 F.2d at 158.
 
 
 7
 After review of the record before the ALJ, we agree with the BRB that the ALJ's decision to credit Dr. Hollinger's opinion over Dr. Gutensohn's is supported by substantial evidence in the record as a whole and is not contrary to law. Robinson asserts that the ALJ's reliance on Dr. Hollinger is improper as a matter of law because Dr. Hollinger's diagnosis was the result of subjective opinions concerning pneumoconiosis hostile to the spirit of the Act. In particular, Robinson contends that Dr. Hollinger testified that he would never diagnose pneumoconiosis absent a positive x-ray. The BRB has held that an ALJ may discount the opinion of a physician who holds such a view because the view directly contravenes a specific provision of the Act. Nagle v. Barnes & Tucker Co., 1 Black Lung Rep. (MB) 1-961, 1-965 (Ben.Rev.Bd.1978); accord Black Diamond Coal Mining Co. v. Benefits Review Bd., 758 F.2d 1532, 1534 (11th Cir.1985). The present case, however, is distinguishable. Dr. Hollinger's exact testimony was that someone would have to have an abnormal x-ray if they were "totally impaired" due to pneumoconiosis, and merely agreed that he "would not be inclined" to diagnose pneumoconiosis absent an abnormal x-ray. Hollinger Deposition Transcript at 50-51. Furthermore, read in its full context, Dr. Hollinger's testimony was that considering Robinson's smoking history, the absence of a positive x-ray led him to conclude that Robinson's respiratory problems were the result of smoking and not pneumoconiosis. Id. at 33. On cross-examination, Dr. Hollinger expressly stated that his conclusion was based on all the medical information available to him (which included the results of ventilatory studies, arterial blood gas tests, an electrocardiogram, as well as two x-rays). Id. at 38. While Dr. Hollinger's opinion regarding Robinson was certainly based in part on the lack of a positive x-ray, it was not based solely on this.[1] His opinion, therefore, was not based on a medical theory hostile to the Act.
 
 
 8
 Robinson further argues that the ALJ should have credited Dr. Gutensohn's opinion because it was based on more recent information. Dr. Hollinger's opinion was based on a personal examination and the results of tests performed in 1980, including negative x-rays. Dr. Gutensohn's opinion was based on a personal examination and the results of tests performed in 1984, including a positive x-ray (which was the only x-ray taken since 1980). As pneumoconiosis is a progressive disease, the ALJ certainly should consider the temporal proximity of conflicting test results in determining which of two different medical opinions to credit. See Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 484 U.S. 135, 151-52, 108 S.Ct. 427, 436, 98 L.Ed.2d 450 (1987). Temporal proximity, however, is simply a factor to be considered, not a controlling one. Viewing the record as a whole, we conclude that substantial evidence exists to support the ALJ's decision to credit Dr. Hollinger's opinion that Robinson's respiratory problems were the result of his smoking history and not his exposure to coal dust, despite the comparative age of the information upon which the opinion was based.
 
 
 9
 Robinson also challenges the ALJ's decision to credit the portion of Dr. Hollinger's opinion concerning Robinson's ability to return to work as a caterpillar operator. Robinson emphasizes that Dr. Hollinger did not ask Robinson about the specifics of his job, which included cleaning mud from the caterpillar's tracks at the end of the shift. Robinson introduced evidence that this was the most strenuous part of the job. See Ray Williams Deposition Transcript at 10. Dr. Hollinger, however, did testify that he was familiar with the general operation of heavy machinery, including caterpillars, and Dr. Gutensohn expressed no opinion whatsoever on the issue. Furthermore, statements which Robinson made during an interview with a representative of his former employer implied that he retired mainly because of his age, 65, and not his respiratory problems. Employer's Exhibit 3, at 4, 8. Given the high degree of deference that we must accord the ALJ's findings of fact, we are unable to hold that the ALJ's decision to credit this portion of Dr. Hollinger's testimony is not supported by substantial evidence.
 
 III. CONCLUSION
 
 10
 We conclude that the ALJ's decision to credit Dr. Hollinger's opinion over Dr. Gutensohn's is supported by substantial evidence in the record as a whole.[2] Because Dr. Hollinger's opinion that Robinson is able to return to work as a caterpillar operator is sufficient to rebut the interim presumption of pneumoconiosis and to uphold the ALJ's denial of Robinson's claim for black lung benefits, we affirm the BRB's order.
 
 
 11
 LAY, Chief Judge, dissenting.
 
 
 12
 I dissent. The record clearly demonstrates that the denial of black lung benefits by the Director is arbitrary and unreasonable. I submit that the ALJ's denial of benefits is devoid of any substantial evidence and cannot be sustained on the record as a whole.
 
 
 13
 Based upon competent medical testimony, the ALJ found that the claimant was eligible for the interim presumption of total disability due to pneumoconiosis pursuant to 20 C.F.R. § 727.203(a). The presumption was based on evidence that Robinson had worked as a coal miner for thirteen years, and ventilatory and blood gas studies conducted in 1980 which indicated the presence of the disease. In addition, the medical opinion of a physician, Dr. Max Gutensohn, appointed by the Director, concluded that the claimant was disabled by pneumoconiosis.
 
 
 14
 The ALJ properly invoked the presumption of total disability based upon Dr. Gutensohn's 1984 examination of Robinson.[1] Then, incredibly, the ALJ held that the presumption was rebutted by the examination of Dr. Hollinger, the insurance company's doctor, made four years before, in 1980. The Sixth Circuit has noted the unreasonableness of such an analysis: "The presumptions contained in the Black Lung Act would be of little value if they could be rebutted by evidence consisting of medical opinions reached as a result of examinations of a claimant conducted at a time before the claimant had established the conditions required to trigger the presumptions." Cooley v. Island Creek Coal Co., 845 F.2d 622, 623-24 (6th Cir.1988).
 
 
 15
 The relevant question in black lung cases is whether the claimant is disabled at the time of the hearing. Id. at 624. The Gutensohn examination was the only evidence within the record as to claimant's condition in 1984. Not only was Dr. Gutensohn's exam more recent than Dr. Hollinger's, but the X-rays taken in 1984 indicated that Robinson had pneumoconiosis.
 
 
 16
 By crediting Dr. Hollinger's testimony, the ALJ failed to recognize the progressive nature of pneumoconiosis. The ALJ observed that the three X-rays taken in 1980 and the one taken in February of 1983 were negative. The only positive X-ray was taken by Dr. Paul Williams on September 10, 1984. From this the ALJ reasoned that "a majority of the readings are negative for pneumoconiosis." Thus, the ALJ rejected the positive X-ray evidence. With all due respect, this is unbelievable.[2] The same X-ray was not being read by different physicians. Other than Dr. Gutensohn, none of the readers of the 1980 X-rays examined the X-ray taken in 1984. The X-rays represented examinations of Robinson's lungs in 1980 and 1984, four years apart. When compared, the 1984 X-ray showed the presence of pneumoconiosis, a marked change from the negative X-rays taken in 1980. The ALJ and the majority of this court view this evidence as if they were assessing credibility of two conflicting medical opinions of contemporaneous examinations. This simply was not the case.
 
 
 17
 The ALJ's analysis demonstrates that he did not understand the law governing evaluation of the progressive nature of the disease. The Supreme Court has explained the insignificance of an early negative X-ray:
 
 
 18
 Since pneumoconiosis is a progressive and irreversible disease, early negative X-ray readings are not inconsistent with significantly later positive readings.... In a situation ... where the more recent X-ray evidence is negative and directly conflicting with earlier positive X-rays it may be weighed with less regard to timing in light of the recognized principle that negative X-ray readings are not a trustworthy indicator of the absence of the disease.
 
 
 19
 Mullins Coal Co. v. Director, 484 U.S. 135, 151-52, 108 S.Ct. 427, 436, 98 L.Ed.2d 450 (1987) (quoting Elkins v. Beth Elkhorn Corp., 2 BLR 1-683, 1-686 (Ben.Rev.Bd.1979)).
 
 
 20
 Not only did the ALJ's analysis unreasonably fail to consider the passage of time between the X-rays and the progressive nature of black lung disease, but in recognizing Dr. Hollinger's conclusion under section 727.203(b)(3) (claimant's total disability did not arise in whole or in part out of coal mine employment),[3] it lends credibility to a view which is clearly hostile to the provisions of the Black Lung Act. The Act specifically states that no claim for benefits shall be denied solely on the basis of a negative chest X-ray. 20 C.F.R. § 410.414(c). But at his deposition, Dr. Hollinger stated that "in order for me to be able to establish a diagnosis of ... pneumoconiosis, I would have to see an abnormal chest X-ray, and I don't see that type of picture." Hollinger Depo. at 33. The majority contends that Dr. Hollinger did not base his opinion that Robinson's health problems were caused by smoking solely on the negative X-rays,[4] that the X-rays were merely a factor to be considered along with other tests including a physical exam, pulmonary function tests, blood gas studies, and Robinson's prior smoking history. The problem with the majority's reasoning is that the "other tests," i.e., the 1980 pulmonary and blood gas studies, were "qualifying and conforming," sufficient to raise a presumption for pneumoconiosis. The ALJ relied on those "other tests" in invoking the interim presumption.[5] However, Dr. Hollinger's deposition testimony makes clear that a positive X-ray was indispensable to a finding of pneumoconiosis.[6] Thus, Dr. Hollinger simply concluded that since Robinson's 1980 X-ray did not indicate the presence of pneumoconiosis, Robinson's health problems could only be explained by his smoking history.
 
 
 21
 In Black Diamond Coal Mining Co. v. Benefits Review Board, 758 F.2d 1532, 1534 (11th Cir.1985), the Eleventh Circuit affirmed the Benefits Review Board's holding that "as a matter of law, [the examining physician's] testimony was 'hostile to the Act' because he stated that he would not diagnose pneumoconiosis absent positive x-ray evidence that the disease existed." Thus, the court concluded "the Board could discount the opinion as being inconsistent with the act." Id.; see also Kaiser Steel Corp. v. Director, Office of Workers' Compensation, 757 F.2d 1078, 1082 (10th Cir.1985) (physician's testimony correctly discredited as being in direct conflict with a basic premise of the act where physician held the erroneous belief that simple pneumoconiosis was not disabling). Though the "hostility rule" is discretionary and does not mandate discrediting all testimony which is hostile to the intent behind the Act, a physician's testimony must still be the "documented opinion of a physician exercising reasoned medical judgment" in order to rebut the interim presumption of disability. Amax Coal Co. v. Director, Office of Workers' Compensation Problems, 801 F.2d 958, 963 (7th Cir.1986). Here, in light of Dr. Hollinger's preconceived beliefs regarding the necessity of an "abnormal" X-ray and the Act's explicit language to the contrary, as well as the 1980 pulmonary and blood gas tests which indicated pneumoconiosis, I submit that Dr. Hollinger's 1980 opinion is not even a reasoned medical judgment.
 
 
 22
 There are several additional reasons why the ALJ's reliance on Dr. Hollinger's testimony is misplaced. First, Dr. Hollinger's report inaccurately stated that Robinson worked as a strip miner for thirteen years. Robinson testified that he worked underground during the early years of his coal mine employment and his black lung application form indicates that he worked underground from 1928-1934.[7] Furthermore, the ALJ based his credibility finding at least in part on Dr. Hollinger's statement made in 1980 that Robinson could continue to do his job as a caterpillar tractor driver. Yet, Dr. Hollinger never asked Robinson about the specifics of his job and therefore could not form an informed opinion. Finally, as stated above, the relevant inquiry is not whether the claimant was disabled years ago but whether the claimant is disabled on the date of the hearing.
 
 
 23
 Assuming that Dr. Hollinger's 1980 exam in some remote way constitutes substantial evidence, it should have little weight when evaluated in light of the positive findings of a progressive disease in 1984. I respectfully submit there exists no substantial evidence on the record as a whole to support the Director's conclusion.
 
 
 24
 To deny Robinson disability benefits is a miscarriage of justice.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed
 
 
 [1]
 The dissent asserts that Dr. Hollinger must have based his conclusion solely on the lack of a positive x-ray, because the other test results available to him raised a presumption of pneumoconiosis. We do not agree with the dissent's analysis. The results of the ventilatory studies and arterial blood gas tests merely raised a presumption of pneumoconiosis as a matter of law because of Robinson's coal mining experience, see 20 C.F.R. § 727.203(a)(2), (3), they did not require a diagnosis of pneumoconiosis as a matter of medical science. Moreover, the blood gas tests revealed a significant amount of carboxyhemoglobin, which was related to Robinson's smoking. Hollinger Report, Sept. 26, 1980, at 3. Dr. Hollinger's conclusion, therefore, was not inherently inconsistent with the other test results
 
 
 [2]
 The dissent also asserts that the ALJ's reliance on Dr. Hollinger's opinion is misplaced because Dr. Hollinger's report is inaccurate regarding Robinson's coal mining experience. Under the circumstances, however, we find this argument unconvincing. Both Dr. Gutensohn's and Dr. Hollinger's reports contain some inaccurate background information. Dr. Gutensohn, for example, significantly understated the extent of Robinson's smoking history. Robinson testified that he smoked one can of pipe tobacco every week or week and one half for twelve years, up to one pack of cigarettes per day for eleven years, and up to three to four cigarettes per day for four more years. Hearing Transcript at 29-30. According to Dr. Gutensohn's report, Robinson smoked about one pack per day for twelve years and for part of that time, had just one cigarette after meals. Gutensohn Report, Sept. 10, 1984, at 1. Thus, in this case, the ALJ had to credit one medical opinion based in part on inaccurate information over another opinion with the same flaw. Viewing the record as a whole, we believe that substantial evidence exists to support the ALJ's decision here
 
 
 [1]
 Dr. Gutensohn had also examined Robinson in 1980
 
 
 [2]
 If four X-rays showed that an individual had no osteoarthritis (a progressive disease) in the knees or hips in 1980, but a subsequent X-ray taken in 1984 showed clear evidence of osteoarthritis, no competent physician would give a reasoned judgment that the individual had no osteoarthritis since four out of five "readings" were negative. I respectfully submit such an analysis is patently unreasonable
 
 
 [3]
 It should be emphasized that in order to rebut the presumption under section 727.203(b)(3), it is not sufficient to show that another cause such as smoking contributed to the claimant's disability. It must be proven that employment in the coal mines did not play any role in the disability
 The blood gas studies cited by the majority in footnote 1 were found by the ALJ to qualify Robinson for the presumption of pneumoconiosis. Contrary to the majority's statement in footnote 1, such studies do not demonstrate that Robinson's condition was caused by smoking. Dr. Hollinger rendered an opinion in 1980 that the test results were related to smoking simply because he could not find a positive X-ray at that time. At the very least, this court should remand this case to the ALJ to have Dr. Hollinger review the X-rays taken in 1984. I respectfully submit for the ALJ to deny benefits to a claimant suffering from a progressive disease based upon an examination made four years before a positive X-ray was taken is patently arbitrary and unconscionable. See Cooley, 845 F.2d at 623-24.
 
 
 [4]
 At the time of Dr. Hollinger's deposition, November 21, 1983, the X-ray which was read to be positive for pneumoconiosis had not yet been taken
 
 
 [5]
 As the ALJ found:
 Ventilatory Studies
 The presumption will also be raised if ventilatory studies establish the existence of a chronic respiratory or pulmonary disease (§ 727.203(a)(2)). In order to be considered, these studies must be both "qualifying" and "conforming." A qualifying study is a study which produces forced expiratory volume in one second (FEV1) and maximum voluntary ventilation (MVV) values which are equal to or less than the values set out in 20 C.F.R. § 727.203(a)(2). In order to be considered conforming, the study must meet the quality standards set out in 20 C.F.R. § 410.430.
 There were four ventilatory studies performed and submitted. The results of these studies were reported as follows:
 Date Exhibit Doctor Height FEV1 MVV
2/21/80 DX 10 ? 70" 2.16 72
9/23/80 EX 2, DX 18 Hollinger 68 1/2 " 2.02 77
9/23/80 EX 2, DX 18 Hollinger 68 1/2 " 2.19 80 *
9/10/94[sic] CX1 Burchett 71" 1.6 48
* post bronchodilator
 All of the studies submitted were both qualifying and conforming. The evidence submitted, therefore, is clearly sufficient to raise the presumption pursuant to § 727.203(a)(2).
 Blood Gas Studies
 The presumption may also be raised by blood gas studies which demonstrate an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values equal to or below those set out in the chart in 20 C.F.R. § 727.203(a)(3). There were two blood gas studies performed and submitted in this case. The results of these studies were reported as follows:
 Date Exhibit Doctor PCO2 PO2
2/22/80 DX 13 Gutensohn 30.3 68.2
9/23/80 EX 2, DX 18 Hollinger 36.3 69.9
9/23/80 EX 2, DX 18 Hollinger 34.4 99.9*
* after exercise
 The study performed by Dr. Gutensohn produced qualifying results (DX 13) while the study by Dr. Hollinger did not. (DX 18, EX 2). Since the studies are substantially contemporaneous, the evidence submitted is evenly balanced. In such a situation, the claimant is entitled to the benefit of the doubt. The evidence submitted, therefore, is sufficient to raise the presumption pursuant to § 727.203(a)(3).
 (ALJ Dec. and Ord. at 3-4).
 
 
 [6]
 At his deposition, Dr. Hollinger testified as follows:
 Q (By Mr. Fritz) And let me ask you about x-rays in general, in diagnosing, is it a correct interpretation of what you said earlier that in diagnosing coal workers' pneumoconiosis, an abnormal x-ray is indispensable?
 A Correct.
 Q So, you would not be inclined to diagnose coal workers' pneumoconiosis, CWP, in the absence of an abnormal x-ray; is that correct?
 A Yes.
 Q Do you believe it's possible for Mr. Robinson to have, or any, let's make it general, for an individual coal miner, to have a totally disabling form of coal workers' pneumoconiosis with a valid, readable, negative chest x-ray?
 A To the best of my understanding, for someone that would be totally impaired based on the fact that it was a pneumoconiosis, I would say they would have to have an abnormal chest x-ray.
 (Hollinger depo. at 50-51).
 
 
 [7]
 This is significant since Dr. Hollinger's report indicates his understanding that coal dust exposure is less in strip mining than in underground mining