# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3215

_____

| | |
|---|---|
| DM & IR Railway Company; | * |
| Signal Administration, Inc., | * |
| | * |
| Petitioners, | * |
| | * |
| v. | * |
| | * |
| Director, Office of Workers' | * |
| Compensation Programs; United States | * |
| Department of Labor; Ronald Fransen; | * |
| Special Compensation Fund, | * |
| | * |
| Respondents. | * |

_____

No. 97-3220

_____

| | | |
|---|---|---|
| DM & IR Railway Company; | * | Petitions for Review |
| Signal Administration, Inc., | * | of an Order of the |
| | * | Benefits Review Board. |
| Petitioners, | * | |
| | * | |
| v. | * | |
| | * | |
| Director, Office of Workers' | * | |
| Compensation Programs; United States | * | |
| Department of Labor; Milton Zebott, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted: March 12, 1998

Filed: August 21, 1998
_____

Before WOLLMAN and HANSEN, Circuit Judges, and GOLDBERG,[1] Judge.
_____

WOLLMAN, Circuit Judge.

In this consolidated appeal, the DM & IR Railway Company (Railway) petitions for review of an order of the Benefits Review Board of the Department of Labor ( the Board) awarding benefits to Ronald Fransen and Milton Zebott under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* We affirm both awards.

## I. Background

On December 8, 1992, Fransen injured his left knee while working as a composite mechanic for the Railway at its iron ore loading dock in Two Harbors, Minnesota. His injury eventually required surgery, and he was unable to return to work until July 18, 1993. The Railway laid Fransen off shortly after his return, and he has since remained unemployed. The Railway paid him all wage loss benefits and a ten-percent permanent partial disability of the left lower extremity under 33 U.S.C. § 908(c)(22). In January of 1994, Fransen filed a prehearing statement seeking

_____

[1]The HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

permanent total disability benefits or, alternatively, a permanent partial disability based on a twenty-percent loss of the use of his leg.

On April 30, 1992, Zebott injured his left knee while working as a control operator for the Railway at the Duluth ore docks. After working for several months in a light-duty capacity, Zebott underwent two knee surgeries. He then attempted to return to work with the Railway as a janitor, but was forced to cease his duties after experiencing considerable pain and swelling in his knee. Zebott was paid temporary total disability benefits and a ten-percent permanent partial disability of the left lower extremity. He eventually sought permanent total disability benefits or, alternatively, a twenty-two percent permanent partial disability of the left lower extremity.

Both Fransen and Zebott were granted a hearing before an Administrative Law Judge (ALJ). In each case, the Railway and the claimants retained medical and vocational experts. After concluding that in each case the Railway had failed to establish the existence of suitable alternative employment, the ALJ awarded both men permanent total disability benefits. The Railway appealed both awards to the Board, which affirmed both decisions.

## II. Standard of Review

Our review of the Board's decisions is limited. See Robinson v. Missouri Mining Co., 955 F.2d 1181, 1183 (8th Cir. 1992); Arrar v. St. Louis Shipbuilding Co., 837 F.2d 334, 335 (8th Cir. 1988). The Board must affirm the ALJ's findings unless they are contrary to law or not supported by substantial evidence in the record as a whole. See Meehan Seaway Serv. Co. v. Director, Office of Worker's Compensation Programs, 125 F.3d 1163, 1166 (8th Cir. 1997), cert. denied, 118 S. Ct. 1301 (1998); Robinson, 955 F.2d at 1183. This principle applies even if the Board might have reached a factual conclusion different from that reached by the ALJ. See Robinson, 955 F.2d at 1183. Because our sole purpose on appeal is to assure that the Board

followed this standard of review, we examine the ALJ's findings under an identical standard. See id. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Associated Elec. Co-op., Inc. v. Hudson, 73 F.3d 845, 848 (8th Cir. 1996).[2]

### III. Ronald Fransen

We first consider the Railway's argument that Fransen is precluded from recovery for a permanent total disability under 33 U.S.C. § 908(a), by the Supreme Court's decision in Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs, 449 U.S. 268 (1980) ("PEPCO"). Section 908(a) provides two-thirds wages for claimants with a permanent total disability. In PEPCO, which involved a permanent partial disability, the Court held that a claimant who is permanently partially disabled by an injury that falls within the listed injuries under the schedule set forth at 33 U.S.C. § 908(c) is limited to a schedule award and may not seek a larger reward under 33 U.S.C. § 908(c)(21). See Gilchrist v. Newport News Shipbuilding & Dry Dock Co., 135 F.3d 915, 918-19 (4th Cir. 1998). Section 908(c)(21) provides that "[i]n all other cases . . . the compensation shall be [two-thirds]

---

[2]The Railway argues that the Supreme Court's decision in Director, Office of Workers' Compensation Programs v. Greenwich Collieries, 512 U.S. 267 (1994), abrogated the long-held standard that the LHWCA is to be liberally construed in favor of awarding benefits. There, the Court held that the "true doubt" rule applied by Department of Labor administrative law judges, under which the burden of persuasion is shifted to the party opposing the benefits claim in cases where the ALJ expresses doubt about which testimony to credit, is invalid. See id. at 281. The ALJ decided neither of the present cases on the strength of the "true doubt" rule, and we do not read Greenwich Collieries as in any way diminishing the scope of the fact-finding and credibility-determining roles traditionally assigned to ALJs in these types of cases.

of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter[.]"  33 U.S.C. § 908(c)(21).  The Railway argues that a section 908(a) claim is a claim for total loss of earning capacity similar to a section 908(c)(21) claim.  We do not agree.  Section 908(c)(21) is a catchall provision that applies to permanent partial disabilities not included on the scheduled list of specific injuries under sections 908(c)(1)-(20).  See Gilchrist, 135 F.3d at 918-19.  Section 908(a), on the other hand, provides the sole remedy for a permanent total disability.  Under the Railway's theory, claimants who are disabled by an injury listed in the section 908(c)(1)-(20) schedule would be precluded from recovering total permanent disability benefits under section 908(a).  We do not believe that Congress intended such a result.

The Railway also argues that the ALJ's finding that suitable alternate employment was unavailable was not supported by substantial evidence.  To establish a *prima facie* case for total disability, Fransen must demonstrate that he is unable to return to his former position with the Railway.  See Meehan, 125 F.2d at 1170.  Fransen met this burden by submitting medical evidence that he could not return to work as a composite mechanic.  Once Fransen established his *prima facie* case, the burden shifted to the Railway to rebut disability by demonstrating "suitable alternative employment available upon a reasonably diligent search by the claimant."  Id.  An employer can establish the availability of alternative employment by proving that the claimant could earn wages in regular, continuous employment.  See id.  An employer meets its burden by establishing that "there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job."  New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1043 (5th Cir. 1981); see also Lentz v. Cottman Co., 852 F.2d 129, 131 (4th Cir. 1988).  Once an employer has established suitable alternative employment, the burden shifts to the employee to rebut the employer's showing of alternative employment by demonstrating a "diligent yet unsuccessful job search."  Edwards v. Director, Office of Workers' Compensation Programs, 999 F.2d 1374, 1376 n.2 (9th Cir. 1993); see

also Pietrunti v. Director, Office of Workers' Compensation Programs, 119 F.3d 1035, 1041 (2d Cir. 1997); Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988); Roger's Terminal & Shipping Corp. v. Director, Office of Workers' Compensation Programs, 784 F.2d 687, 691 (5th Cir. 1986).

Fransen's vocational expert, Jack Casper, testified that no suitable alternative employment was available to Fransen and that he was unsuitable for retraining due to his lack of transferrable skills. The Railway contends that the ALJ improperly discounted several positions that Ed Utities, the Railway's vocational expert, testified were both readily available and compatible with Fransen's abilities. Utities testified that positions were available in sales, telemarketing, as a security guard, and as a line worker for P.V. Foods, a taco producer. Citing Fransen's hearing impairment and the hiring preferences of prospective employers, the ALJ rejected the telephone sales, telemarketing, and security guard positions. The ALJ also found that the sales positions were not realistically available to Fransen, given his vocational history and his diligent efforts to secure such a position without success. A front-desk position at a chemical dependency rehabilitation center was also dismissed by the ALJ on the ground of possible hiring preferences. Finally, the ALJ concluded that the line worker job at P.V. Foods was insufficient, standing alone, to establish the availability of suitable alternative employment.

We conclude that the ALJ's finding that Fransen is permanently totally disabled was supported by substantial evidence on the record as a whole. The ALJ considered medical reports, physicians' opinions, the opinions and reports of the vocational experts, and Fransen's own testimony in reaching his decision. The credibility and expertise of the parties' expert witnesses were matters to be resolved by the ALJ. See Robinson 955 F.2d at 1183.[3]

_____

[3]The Railway argues that the ALJ improperly discredited the testimony of Marty Anderson, the owner of a fitness center where Fransen exercised. Anderson, who

Even assuming, *arguendo*, that the Railway met its burden, we believe that Fransen made a convincing rebuttal. The evidence of his efforts to secure alternative employment included a job application log containing more than 200 entries and Casper's testimony that Fransen had made diligent efforts to secure a position.

## IV. Milton Zebott

Likewise, the ALJ's decision to award Zebott total permanent disability was supported by substantial evidence on the record as a whole. Because the parties agree that Zebott cannot return to his former position, he has presumptively established that he is totally disabled. See Meehan, 125 F.2d at 1170. Thus, the Railway was required to rebut this showing of disability by establishing suitable alternative employment. See id. Insisting that the ALJ applied an overly stringent standard and that his decision was not supported by substantial evidence, the Railway disputes the ALJ's finding that it had not met its burden. We conclude that the ALJ did not err in so finding.

The ALJ rightfully rejected the Railway's janitorial position as unsuitable alternative employment. Zebott testified that his attempts at performing the janitorial position resulted in pain and swelling that were severe enough to require a trip to the emergency room. Dr. Mark J. Carlson, Zebott's treating orthopaedic surgeon, stated that Zebott could not continue work as a janitor and that he had restricted Zebott to work that involved no stooping, significant bending, or lifting of objects over twenty

helped Fransen develop a rehabilitative exercise program for his left knee, testified that Fransen's knee strength and endurance increased significantly during his rehabilitation. Anderson also felt that during the time in question, Fransen was in excellent to superior physical condition. The ALJ was free to discredit the testimony of a lay witness that contradicted the opinions of numerous medical experts. See Consolidation Coal Co. v. McGrath, 866 F.2d 1004, 1007 (8th Cir. 1989) (ALJ's may resolve issues of credibility as to lay witnesses and credit the properly submitted medical opinion of one physician over another).

pounds. Vocational experts for both parties agreed that Dr. Carlson's restrictions rendered Zebott unable to perform the janitorial duties.

With respect to the finding that other suitable alternative employment was unavailable, Jack Casper testified that Zebott could perform only within a "highly modified sedentary category" of work. Casper further noted that he could think of no position in the Duluth job market that could be modified enough to give Zebott a consistent and competitive opportunity to earn a living. The ALJ specifically found Casper's opinions to be more credible than those of Ed Utities, the Railway's expert. Additionally, Zebott's functional capacity evaluation indicated that he has a limited tolerance for sitting. Dr. John Dowdle, the Railway's examining physician, concurred with this finding. We conclude that this evidence was adequate to support the ALJ's finding that no suitable alternative employment was available to Zebott.

The judgments are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.