868 F.2d 600
 In the Matter of ROCHESTER & PITTSBURGH COAL CO., Petitioner,
v.
Mike KRECOTA, Claimant-Respondent,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest/Respondent.
 No. 88-3547.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 24, 1989.
Decided Feb. 23, 1989.
 
 Eric Jones (argued), Tillman & Thompson, Pittsburgh, Pa., for petitioner.
 Michael J. Denney, Nicholas J. Levintow (argued), U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Solicitor for Black Lung Benefits, Donald J. Denney, Counsel for appellate Litigation, for party-in-interest/respondent.
 Blair V. Pawlowski, U.M.W.A. District No. 2 Legal Counsel, Ebensburg, Pa., for Mike Krecota.
 Before GIBBONS, Chief Judge, and SEITZ and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 Rochester and Pittsburgh Coal Company petitions this court for review of a decision of the Benefits Review Board (BRB) dated June 22, 1988, determining that Mike Krecota was eligible for benefits payable by the Coal Company under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-45. We have jurisdiction under 30 U.S.C. Sec. 932(a) and 33 U.S.C. Sec. 921(c). See Sulyma v. Director, OWCP, 827 F.2d 922, 922 (3d Cir.1987).
 
 
 2
 Krecota had been employed for 37 years with the Coal Company and the Creighton Fuel Company before retiring on June 24, 1977, 30 to 32 of which were spent working in the mines. Prior to retirement Krecota filed a claim with the Social Security Administration for benefits under Part B of the Act. This claim was denied and on June 30, 1977, Krecota filed a claim with the Department of Labor for benefits under Part C of the Act. The Part C claim was administratively approved, and both Administrative Law Judge Daniel L. Leland and the BRB affirmed. This appeal concerns only the Part C claim.
 
 
 3
 On appeal the Coal Company argues that any liability for benefits should have been transferred to the government's Black Lung Disability Trust Fund, and that if the liability was not transferred Krecota was not eligible for benefits.[1] With regard to its contention that Krecota was not eligible for benefits the Coal Company argues that medical evidence did not establish Krecota's total disability for all, or at least a substantial portion of, the period covered by the BRB's award.
 
 
 4
 ALJ Leland held a formal hearing on January 10, 1986, during which the Coal Company presented evidence to support its contention that liability for payment should have been transferred from the Coal Company to the Black Lung Disability Trust Fund. Section 205 of the Black Lung Benefits Amendments Act of 1981, Pub.L. No. 97-119, 95 Stat. 1635 (codified at 30 U.S.C. Secs. 932(c) & 932(j)(3)), establishes the criteria for the transfer of claims to the Trust Fund.
 
 
 5
 A claim may be transferred when the "claim [was] denied before March 1, 1978, and such claim [was then] or [was subsequently] approved in accordance with the provisions of section 945 of [title 30 U.S.C.]." 30 U.S.C. Sec. 932(j)(3); see id. Sec. 932(c). It is uncontested that Krecota filed a Part B claim which was denied before March 1, 1978, and that this claim was not subsequently approved.[2] Thus, on the face of the statute it appears that there is no basis for transferring liability from the Coal Company to the Trust Fund.
 
 
 6
 Nonetheless, the Coal Company argues that transfer of both the Part B and Part C claims is proper because it asserts that Krecota was never sent a card allowing him to elect review of his Part B claim. That portion of the Act which specifies the mechanism by which claimants were to be notified of their opportunity to request administrative review of their denied Part B claims, 30 U.S.C. Sec. 945, is expressly referenced by section 205 of the 1981 Amendments. Section 945 requires the Secretary of Health and Human Services to notify claimants whose Part B were denied before March 1, 1978,[3] that upon request the denial would be reviewed by the claimant's choice of either the Secretary of Health and Human Services or the Secretary of Labor. Moreover, the two different review routes involved different procedures.
 
 
 7
 The Coal Company asks this court to conclude that Krecota was never sent an election card and that if he had received a card he would have requested review by one of the two department heads and that if he had elected review his claim would have subsequently been approved. We, however, reject this argument as there is nothing in the statute or regulations which provides that operators may raise claims for miners not afforded their rights to seek review of denied Part B claims.[4] Further, it could not be held that Krecota would necessarily have elected to seek a review even if we assume that he was not given the opportunity for one. In this regard we note, though our result is not dependent on the point, that we understand Krecota was receiving benefits under Part C of the Act at the time he would have had to decide whether to elect review and thus might not have been motivated to elect the review of the denial of his Part B claim.[5] Consequently, we will affirm the BRB's decision not to transfer liability for this claim from the Coal Company to the Trust Fund.[6]
 
 
 8
 Having established that any liability for the payment of benefits remains with the Coal Company we must address the Coal Company's contention that Krecota was not eligible for benefits for all, or at least a substantial portion of, the period covered by the BRB's award.
 
 
 9
 The medical evidence considered by the ALJ included reports from Krecota's medical expert and the Coal Company's medical expert that as of December 1985, Krecota had coal worker's pneumoconiosis. These experts disagreed, however, as to whether the pneumoconiosis rendered Krecota "totally disabled".
 
 
 10
 Inasmuch as Krecota worked in coal mines for at least 30 years, ALJ Leland invoked the interim presumption established by the pertinent regulations, 20 C.F.R. Sec. 727.203(a), that an individual who has been employed as a coal miner for at least ten years and who establishes by specified means that he has pneumoconiosis is "totally disabled" due to pneumoconiosis arising out of coal mine employment. Krecota's evidence established three independent bases for invoking the interim presumption. First, all of the chest x-rays presented at the hearing established the existence of pneumoconiosis. See 20 C.F.R. Sec. 727.203(a)(1). Second, contradictory pulmonary function studies were presented at the hearing: the positive studies established a basis in the record for a finding of pneumoconiosis, see 20 C.F.R. Sec. 727.203(a)(2), while the negative studies were conducted earlier in time thus providing ALJ Leland with an adequate reason for choosing to rely on the studies indicating the presence of pneumoconiosis. Third, the aforementioned contradictory testimony of the medical experts similarly provided ALJ Leland with a basis to invoke the interim presumption, see 20 C.F.R. Sec. 727.203(a)(4), and ALJ Leland provided a rational explanation for his finding that the testimony of Krecota's medical expert was more persuasive.[7]
 
 
 11
 The regulations further establish that the interim presumption may be rebutted. See 20 C.F.R. Sec. 727.203(b). ALJ Leland found, however, that the evidence was insufficient to rebut the presumption. On appeal the Coal Company argues that under two separate regulatory provisions the evidence was sufficient to rebut the presumption. The first provision relied upon states that rebuttal is accomplished when "[i]n light of all relevant medical evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work." 20 C.F.R. Sec. 727.203(b)(2). The second regulation states that the presumption is rebutted when "[t]he evidence establishes that the total disability ... of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. Sec. 727.203(b)(3).
 
 
 12
 ALJ Leland weighed all the conflicting medical evidence and concluded that the presumption was not rebutted under 20 C.F.R. Sec. 727.203(b)(2). See app. at 18. Although ALJ Leland found that Krecota's smoking habit had contributed to his respiratory impairment, he concluded that the evidence did not rebut the presumption that Krecota's exposure to coal dust was at least in part responsible for his symptoms. See app. at 18. Accordingly, he concluded that the Coal Company did not meet the requirements of 20 C.F.R. Sec. 727.203(b)(3) rebuttal.
 
 
 13
 Both the BRB and this court are bound by ALJ Leland's findings of fact if they are supported by substantial evidence in the record as a whole. See Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 162 (3d Cir.1986). Under this very limited standard of review, the record in this case does not permit us to conclude that ALJ Leland was in error when he concluded that Krecota had established his total disability with the benefit of the interim presumption. Consequently, we will affirm the holding that Krecota is eligible for benefits under the Act. Nonetheless, we note that no evidence in the record indicates that Krecota was totally disabled at any time prior to December 1985.
 
 
 14
 ALJ Leland "determined that the onset date of [Krecota's] total disability is June 1, 1977 as he retired and filed his claim for benefits during that month." App. at 19. Inasmuch as no medical evidence was adduced at the hearing to support this conclusion, it appears that ALJ Leland relied wholly upon 20 C.F.R. Sec. 725.503(b), which he cited in his memorandum and order, as the basis for awarding benefits from the 1977 date. This regulation states that
 
 
 15
 [i]n the case of a miner who is totally disabled due to pneumoconiosis, benefits are payable to such miner beginning with the month of onset of total disability. Where the evidence does not establish the month of onset, benefits shall be payable to such miner beginning with the month during which the claim was filed, or the month during which the claimant elected review....
 
 
 16
 20 C.F.R. Sec. 725.503(b).
 
 
 17
 This regulation clearly provides that benefits are payable from the month when a claim is filed only when the evidence does not establish when the disease progressed to such a stage as to render the claimant totally disabled.
 
 
 18
 The record indicates that three additional physicians examined Krecota, and that they concluded that he had no respiratory disability when examined. Inasmuch as these examinations took place in 1977, 1978, and 1983, substantial evidence was presented to ALJ Leland suggesting that Krecota was not totally disabled as recently as two years before 1985. No contradictory evidence was presented with respect to any period before 1985. Thus, we hold that there was no substantial evidence in the record as a whole supporting ALJ Leland's award of benefits for the period preceding December 1985. Moreover, we hold that ALJ Leland improperly invoked 20 C.F.R. Sec. 725.503(b), given that the evidence in the record established a basis for determining the time when Krecota became totally disabled. As a result, we will vacate ALJ Leland's order and remand this matter for a determination of the month of onset from which Krecota's benefits should be payable.
 
 
 19
 In summary, we will affirm the holdings that the Coal Company is liable for the payment of any benefits to which Krecota is entitled, and that Krecota was eligible for benefits under Part C as of December 1985. We will, however, vacate that portion of the order which establishes June 1, 1977, as the date upon which Krecota became eligible for benefits, and we will remand this matter for a determination of the date on which Krecota became totally disabled.
 
 
 
 [1]
 This statement of the issues reverses the usual order of inquiry; that is, we determine who should pay before establishing whether the claimant is eligible for benefits. In this case, however, the government conceded that Krecota was eligible for benefits. Thus, if we determine that liability should be transferred to the government's Trust Fund we need not address the issue of whether Krecota is eligible for benefits. Consequently, we will consider the transfer issue before approaching the eligibility issue
 
 
 [2]
 It is also uncontested that subsequent to the denial of his Part B claim Krecota filed a claim for benefits under Part C which was approved
 
 
 [3]
 The review mechanism provided by this section was also applicable to Part B claims which were still pending
 
 
 [4]
 Inasmuch as we are disposing of the transfer issue on a legal basis our review is plenary. Carozza v. United States Steel Corp., 727 F.2d 74, 77 (3d Cir.1984)
 
 
 [5]
 We note that in the order transferring liability to the Trust Fund in the factually similar case of Kinder v. Kaiser Steel Corp., 10 Black Lung Rep. (MB) 3-299 (1986), the ALJ first made findings that the election card was never received by the claimant and that the claimant had affirmatively demonstrated that he would have elected review had he received the card
 
 
 [6]
 The Coal Company also raises challenges to the denial of the transfer based on procedures in the administrative proceedings. We reject these contentions which we need not set forth
 
 
 [7]
 ALJ Leland observed that Krecota's own medical expert was more familiar with the physical duties associated with Krecota's last job and that, consequently, Krecota's expert appeared better able to determine whether Krecota was capable of performing those duties