_____

No. 95-1645

_____

Associated Electric Cooperative,* \
Inc.,                           * \
                                * \
        Petitioner,             *  On Petition For Review of a \
                                *  Decision and Order of the \
    v.                          *  Benefits Review Board, United \
                                *  States Department of Labor. \
Clarence Hudson and Director,   * \
Office of Workers' Compensation * \
Programs, United States         * \
Department of Labor,            * \
                                * \
        Respondents.            *

_____

Submitted:   September 15, 1995

Filed:   January 19, 1996

_____

Before FAGG, BEAM*, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.


Associated Electric Cooperative, Inc. (AEC) appeals from a decision of the Benefit Review Board of the Department of Labor (BRB) affirming an award of benefits by an Administrative Law Judge (ALJ) to Clarence Hudson under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. We find that substantial evidence supports the ALJ's decision and therefore affirm the board's decision.

_____

*The Honorable Frank J. Magill was originally assigned to hear this case, but he subsequently withdrew, and the Honorable C. Arlen Beam was substituted.

Hudson worked at coal mines for 44 years until retiring in 1985 at the age of 68. He served as a shovel operator at AEC for the last five years, which included picking stones, oiling the dryer, driving a truck in a surface mine, and operating a drag line. Hudson also smoked one pack of cigarettes a day for 15 to 20 years until age 40. He began suffering breathing difficulties several years before his retirement, which ultimately prevented him from performing the more strenuous parts of his job, such as repairing machines and climbing the boom to oil it.

On April 8, 1985, Hudson filed for benefits under the Black Lung Benefits Act claiming total disability due to coal miner's pneumoconiosis (black lung disease). Nearly four years later, in March 1989, Administrative Law Judge Robert S. Amery awarded him benefits after a hearing. The ALJ based his decision on a diagnosis of pneumoconiosis by Dr. Kuldeep Singh and Dr. Rolf E. Gryte. Dr. Singh was Hudson's personal physician and regularly saw him twice a month for his breathing problems. He diagnosed a severe obstructive lung disease caused by coal dust exposure after two physical examinations, two qualifying pulmonary function tests (pfts), and an evaluation of his medical and work histories. Dr. Gryte similarly concluded that Hudson's coal dust exposure caused pneumoconiosis. His opinion was based on a physical examination, two qualifying pfts, two chest x-rays that were positive for pneumoconiosis, and Hudson's work, smoking, and medical histories.

The ALJ did not find controlling the opinions of two pulmonary specialists, Drs. Peter G. Tuteur and Sheldon R. Braun. Dr. Tuteur's opinion was given less weight because he did not personally examine Hudson, but relied solely on other medical reports and tests. Dr. Tuteur admitted that Hudson's exposure to coal mine dust and certain medical data were consistent with

pneumoconiosis, but concluded that his permanent disability was caused by heart disease and smoking. He also invalidated Hudson's pfts as lacking in effort and as having results inconsistent with two nonqualifying arterial blood gas studies. Dr. Braun likewise found that Hudson had a restrictive and obstructive lung disease and definite coal exposure which were compatible with pneumoconiosis. Because Hudson's chest x-ray was normal, however, Dr. Braun attributed his problems to emphysema.

On appeal, the BRB affirmed the ALJ's finding that Hudson had a total disability, but remanded to determine if there was sufficient evidence that pneumoconiosis was a contributing cause. The ALJ reaffirmed his decision in September 1991. The ALJ first found that the reports of Drs. Singh, Gryte, and Braun were sufficiently documented and reasoned. Although the positive x-ray taken by Dr. Gryte had been reread as negative, the ALJ concluded that this was not controlling in light of the thorough physical examinations by both Dr. Gryte and Dr. Singh, Hudson's treating physician. The ALJ considered that two of the three examining doctors had diagnosed pneumoconiosis and that Hudson could no longer return to his previous mining work, and he concluded that pneumoconiosis was a contributing cause of Hudson's total disability.

The BRB affirmed the ALJ's decision in July 1993. It concluded that the ALJ had weighed all the evidence and possible causes of Hudson's health problems before determining that he was totally disabled due to pneumoconiosis.

Appellant AEC does not dispute that Hudson is totally disabled from coal mine employment, but it argues that the ALJ incorrectly determined that this disability resulted from pneumoconiosis. We have jurisdiction pursuant to 33 U.S.C. § 921(c) as incorporated by 30 U.S.C. § 932(a); see Brown v. Director, O.W.C.P., U.S. Dept. of Labor, 914 F.2d 156, 157 (8th Cir. 1990).

## II.

The Black Lung Benefits Act compensates individuals who prove by a preponderance of the evidence that they are "totally disabled due to pneumoconiosis arising out of employment" in a coal mine. 30 U.S.C. § 901(a); see Mullins Coal Co. v. Director, O.W.C.P., 108 S.Ct. 427, 441 n.35 (1987). Hudson's claim was filed after March 31, 1980, and is therefore controlled by 20 C.F.R. §§ 718.1-718.404. See 20 C.F.R. § 718.2.

Under the controlling provisions, a determination of pneumoconiosis may be made

> if a physician, exercising sound medical judgment, not withstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis . . . based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

20 C.F.R. § 718.202(a)(4). Because Hudson worked as a miner for more than 10 years, there is a rebuttable presumption that the pneumoconiosis arose out of coal mine employment. 20 C.F.R. § 718.203(b).

One focus for this court is whether the BRB properly adhered to its standard of review. Brown, 914 F.2d at 158. The BRB may not undertake a de novo review of the evidence or substitute its views for that of the administrative law judge. Parker v. Director, Office of Workers' Compensation, 590 F.2d 748, 749 (8th Cir. 1979). Instead, it must uphold an ALJ's findings if they are rational, supported by substantial evidence, and consistent with applicable law. Id.; 33 U.S.C. § 921(b)(3).

Substantial evidence is "not necessarily a preponderance of the evidence, but it is more than a scintilla . . . [that which] a

4

reasonable mind might accept as adequate to support a particular conclusion with reference to the evidence as a whole." Parker, 590 F.2d at 749; see also Richardson v. Perales, 94 S.Ct. 1420, 1427 (1971). So long as there is substantial evidence, it is immaterial that the facts permit the drawing of diverse inferences or that this court might have reached a different result in the first instance. Parker, 590 F.2d at 749; Brown, 914 F.2d at 158. It is likewise up to the finder of fact to decide as a matter of credibility whether a physician's report is sufficiently documented and reasoned. Phillips v. Director, O.W.C.P., 768 F.2d 982, 984 (8th Cir. 1985). A reasoned medical judgment represents a physician's professional judgement "as to the most likely cause among the possible causes of the physical condition involved." Brazzalle v. Director, Office of Worker's Comp., 803 F.2d 934, 936 (8th Cir. 1986).

Applying these standards and after examination of the facts contained in the record, we conclude that the ALJ's findings, as affirmed by the BRB, were supported by substantial evidence and were not inconsistent with the law. The ALJ properly weighed all the medical reports and opinions before him to determine that Hudson's total disability resulted from pneumoconiosis due to coal mining.

The ALJ considered and rejected two x-rays which had been read as positive for pneumoconiosis by Dr. Gryte, but which were later reread as negative by more expert physicians. See 20 C.F.R. § 718.202(a)(1) (consideration shall be given to the radiological qualifications of the interpreting physicians in cases of dispute); Mullins Coal Co., 108 S.Ct. at 434 (specialist's x-ray interpretation may be more persuasive than that of a less qualified reader). The Act does not require positive x-rays, however, and the ALJ did not find the negative x-rays dispositive. See § 718.202(a)(4); § 718.202(b) ("[n]o claim for benefits shall be denied solely on the basis of a negative chest x-ray"); Worhach v.

5

<u>Director, O.W.C.P.</u>, 1993 WL 172281 at *3 (Ben.Rev.Bd. 1993) (a medical report can establish the existence of pneumoconiosis regardless of the x-ray evidence).

The ALJ next considered whether the diagnoses of pneumoconiosis by Drs. Singh and Gryte were sufficiently documented and reasoned. Dr. Singh based his opinion on two physical examinations and qualifying pfts, in addition to Hudson's medical and work histories. Although Dr. Tuteur and another pulmonary specialist regarded the pfts as internally inconsistent and lacking in effort, Dr. Singh noted that Hudson exerted good effort on the second qualifying pft. Dr. Singh concluded that Hudson had a severe obstructive lung disease caused by coal dust exposure which prevented Hudson from performing his previous mining work. Because Dr. Singh regularly treated Hudson for his breathing problems at least twice a month, the ALJ had discretion to assign more weight to his opinion. See <u>Ward v. Heckler</u>, 786 F.2d 844, 866 (8th Cir. 1986) (a treating physician's opinion is ordinarily entitled to greater weight than that by a consulting physician in the context of a disability determination).

Dr. Gryte reached similar conclusions to Dr. Singh after his physical examination, two qualifying pfts, and two positive chest x-rays. He concluded that Hudson's cardiopulmonary impairment limited his movements to walking one block, climbing one flight of stairs, and lifting thirty pounds. Although AEC again complains that Hudson exerted poor effort on the pfts that Dr. Gryte administered, Dr. Gryte noted on both of these pft reports that Hudson had shown good cooperation and ability to follow directions. Given that it is the physician's function to interpret medical data, the ALJ did not err in deciding that Dr. Gryte's report was sufficiently documented and reasoned. See <u>Schetroma v. Director, O.W.C.P.</u>, 1993 WL 469254 at *3 (Ben.Rev.Bd. 1993) (medical experts and not the ALJ should interpret medical data). We therefore find that the ALJ properly credited the reports of Drs. Singh and Gryte.

6

Contrary to AEC's suggestion, the ALJ did not ignore the other medical evidence in this case. He noted that Hudson had undergone heart surgery and had been diagnosed with coronary heart disease in February 1984, but that the reporting doctor had not expressed an opinion as to the possibility of pneumoconiosis at the time. The ALJ also considered the report of Dr. Braun to be well documented and reasoned, even though he had diagnosed emphysema instead of pneumoconiosis. After a physical examination, Dr. Braun found that Hudson's clear pulmonary impairment, definite coal exposure, and restrictive and obstructive lung disease would all be compatible with pneumoconiosis if his x-ray result had been abnormal. The ALJ was entitled to consider this statement when evaluating Dr. Braun's final assessment.

The ALJ likewise did not ignore Dr. Tuteur's opinion that Hudson did not have pneumoconiosis, but rather decided to assign it less weight because he had not personally examined Hudson. See Wilt v. Wolverine Mining Co., 1990 WL 284127 at *6 (Ben.Rev.Bd. 1990). Indeed, the ALJ's first opinion detailed Dr. Tuteur's conclusions and also summarized his deposition testimony. Like Dr. Braun, Dr. Tuteur conceded that some of Hudson's medical data was consistent with pneumoconiosis and that his coal dust exposure was sufficient to produce pneumoconiosis. Dr. Tuteur concluded that Hudson's symptoms were also consistent with heart disease and smoking, however, which he believed were the primary causes of his total disability.

Finally, it can be seen that the ALJ gave some credence to the opinions of Dr. Tuteur and a second pulmonary specialist that Hudson's pfts were invalid in that he concluded that Hudson could not establish a total disability based solely on the pft results.[1]

---

[1]Total disability was established by Dr. Singh's conclusion that Hudson could not perform coal mine or comparable work, Dr. Gryte's assessment of Hudson's physical limitations, and Dr. Tuteur's statement that Hudson was permanently and totally

7

The fact that the pfts alone were insufficient to establish a total disability does not contradict the ALJ's separate findings that Hudson suffered from pneumoconiosis and that it was a contributing cause of his total disability. In making these latter determinations, the ALJ properly reconsidered and reweighed all the evidence: Hudson's 44 years of work in coal mines, the reasoned diagnosis of pneumoconiosis by Drs. Singh and Gryte, the medical opinions that Hudson could no longer return to his previous mining work, the opinions invalidating the pfts, negative arterial blood gas studies, and all possible causes of Hudson's physical problems. See 20 C.F.R. § 718.204(c). Based on the totality of the record, it was within the ALJ's discretion as factfinder to conclude that the weight of the evidence established that Hudson had pneumoconiosis and that this was a contributing cause of his total disability under 20 C.F.R. §§ 718.204(a)(4) and 718.204(b).

Although there were conflicting medical opinions in this case, Congress intended its black lung entitlement program to be "liberally construed in favor of the miners to insure compensation in worthy cases despite the extreme difficulty of proving clinically certain medical evidence." Hudson v. Dept. of Labor, 851 F.2d 215, 217 n.3 (8th Cir. 1988). We find that this is such a case given the substantial evidence supporting Hudson's claim. Because the ALJ's findings were rational and his conclusions consistent with applicable law, the BRB properly adhered to its standard of review in affirming his decision. See Parker, 590 F.2d at 749. Hudson is therefore entitled to the benefits he was first awarded nearly six years ago. For these reasons, we affirm.

---

disabled. See 20 C.F.R. § 718.204(b) (a miner shall be considered totally disabled if pneumoconiosis prevents the miner from performing his usual coal mine work or comparable work). Given the medical consensus on this point, AEC does not dispute that Hudson is totally disabled.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.