_____

No. 95-4122

_____

Lovilia Coal Company; Old            *
Republic Insurance Company,          *
                                     *
          Petitioners,               *   On Petition for Review of a
                                     *   Decision and Order of the
     v.                              *   Benefits Review Board,
                                     *   United States Department
Wesley Harvey; Director,             *   of Labor.
Office of Workers'                   *
Compensation Programs,               *
United States Department             *
of Labor,                            *
                                     *
          Respondents.               *


_____

         Submitted:  September 11, 1996

           Filed:    March 21, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and
      WOLLMAN, Circuit Judge.

_____

HENLEY, Senior Circuit Judge.


     Lovilia  Coal  Company  and  its  insurance  carrier,  Old  Republic
Insurance Company, (collectively Lovilia), petition for review of an order
of the Benefits Review Board (Board) of the Department of Labor (DOL)
awarding benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945
(the Act), to Wesley Harvey, a former coal miner employed by Lovilia.  We
affirm the award of benefits.


**Background**

     Harvey, who was born in 1914, worked in coal mines from 1930 until
1975, when he retired after working more than ten years for Lovilia.
Harvey first filed a claim for black lung benefits in

1973, which was denied. In 1977, Congress liberalized eligibility requirements for benefits, and Harvey's claim was reopened and reviewed under the more lenient standards, 30 U.S.C. § 945, but was denied. Harvey again filed claims for benefits in 1983, 1984 and 1987, which were all denied. In March 1990, Harvey again applied for benefits. The deputy director denied the claim, finding that Harvey had not established a material change in conditions. See 20 C.F.R. § 725.309(d) ("If [an] earlier miner's claim has been finally denied, the later claim shall also be denied, on the grounds of the prior denial, unless the deputy director determines that there has been a material change in conditions."). However, after Harvey submitted additional medical evidence and appeared before an administrative law judge (ALJ), the ALJ awarded benefits. The ALJ found that the additional evidence not only showed a material change in conditions, but also showed that Harvey was "totally disabled due to pneumoconiosis." See 30 U.S.C. § 901. In addition, the ALJ rejected Lovilia's argument that 30 U.S.C § 932 transferred liability for payment of benefits from the company to the Black Lung Disability Trust Fund. Lovilia appealed to the Board. The Board rejected Lovilia's arguments relating to transfer of liability and material change, but held that the ALJ had erred in concluding that Harvey was totally disabled due to pneumoconiosis by relying solely on the opinion of Harvey's treating physician, Dr. Gordon Arnott. Accordingly, the Board remanded the case for a reconsideration based on all the evidence of record. On remand, the ALJ again awarded benefits. The Board affirmed, and this petition for review follows.

**DISCUSSION**

On appeal Lovilia first renews its argument that if Harvey is entitled to benefits, section 205 of the Black Lung Benefits Amendments of 1981, Pub. L. 97-119, Title II, 95 Stat 1635 (1981), codified at 30 U.S.C. §§ 932(c)(2), (j)(3), transferred liability for payment of the benefits from the company to the Black Lung Disability Trust Fund (Fund). Lovilia next raises several

challenges to 20 C.F.R. § 725.309(d), the "material change" regulation. In the event this court rejects its arguments relating to transfer of liability and material change, Lovilia goes on to argue that Harvey is not entitled to benefits.

Initially, we note that Lovilia's presentation of "the issues reverses the usual order of inquiry; that is, we determine who should pay before establishing whether the claimant is eligible for benefits." Rochester & Pittsburgh Coal Co. v. Krecota, 868 F.2d 600, 601 n.1 (3d Cir. 1989). "In this case, however, the government conceded that [Harvey] was eligible for benefits." Id. "Thus, if we determine that liability should be transferred to the government's Trust Fund we need not address the issue of whether [Harvey] is eligible for benefits." Id. In addition, we note that the regulations, 20 C.F.R. § 725.497(c), contemplate that transfer issues should be decided "as early as possible in the process--even before final disposition of the miner's claim." Big Horn Coal Co. v. Office of Workers' Comp. Prog., 55 F.3d 545, 551 n.7 (10th Cir. 1995). "Consequently, we will consider the transfer issue before approaching the eligibility issue." Krecota, 868 F.2d at 601 n.1.

**Transfer of Liability**

As previously indicated, in 1977 Congress "substantially liberalized the criteria for establishing an entitlement to benefits." Tonelli v. Director, 878 F.2d 1083, 1984 n.2 (8th Cir. 1989). In addition, Congress provided that "[c]laims denied before March 1, 1978 (the effective date of the 1977 amendments) were to be reexamined under these less demanding standards." Old Ben Coal Co. v. Luker, 826 F.2d 688, 693 (7th Cir. 1987). In order to relieve coal companies of unexpected retroactive liability, in 1981 "Congress provided that liability for claims denied before March 1, 1978 which were thereafter approved under the liberalized eligibility criteria should be transferred from coal operators to the Black Lung Disability Trust Fund." Director v. Drummond Coal

Co., 831 F.2d 240, 242 (11th Cir. 1987) (citing 30 U.S.C. §§ 932(c),(j)).[1] As relevant here, 30 U.S.C § 932(c) provides:

> no benefit shall be payable by any operator on account of death or total disability due to pneumoconiosis . . . which was the subject of a claim denied before March 1, 1978, and which is or has been approved in accordance with the provisions of section 945 of this title.

Section 932(j) provides that the Trust Fund is liable for "payment of benefits in cases . . . in which there was a claim denied before March 1, 1978, and such claim is or has been approved in accordance with the provisions of section 945 of this title."  At the time of the enactment of the 1981 amendments and at all relevant times, DOL regulations defined a claim as "an assertion in writing of an individual's entitlement to benefits."  20 C.F.R. § 725.101(a)(22) (1977) (recodified at 20 C.F.R. § 725.101(a)(16) (1994)).

In this case, the Board upheld the ALJ's rejection of Lovilia's transfer of liability argument.  The Board reasoned that the only claim pending before the ALJ was Harvey's claim of March 1990 and that the claim could not support a transfer of liability since it was not, and could not have been, denied before March 1, 1978.  The Board noted that although Harvey's 1973 claim had been denied before March 1, 1978, it had been denied, not approved, after review under section 945.

Lovilia argues that the Board has misinterpreted the term "claim," as used in section 932.  Lovilia asserts that under the plain meaning of the statute "claim" does not mean an application

---

[1]In addition, the 1981 amendments, which were enacted in response to a large deficit in the Trust Fund, raised taxes on coal operators and tightened eligibility requirements.  See Hawkins v. Director, 907 F.2d 697, 702 n.8 (7th Cir. 1990);  see also Lopatto, The Federal Black Lung Program: A 1983 Primer, 85 W. Va. L. Rev. 677 (1983).

for benefits, but means liability. Lovilia reasons "to insurers 'claims' do not mean 'claim forms' or applications. It means liability." Lovilia's Br. at 27. The Director responds that "claim" plainly means an application for benefits. We agree with the Director. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 117 S. Ct. 843, 846 (1997). As relevant here, the dictionary defines "claim" as "a demand for compensation or benefits (as one in accordance with the provisions of the Social Security Act or workmen's compensation law"), Webster's Third New Int'l Dictionary 414 (1965), and the Black Lung Act provides that a claim for benefits must be filed timely and in a prescribed manner. See, e.g., 30 U.S.C. §§ 923, 924, 932. Moreover, as the Director points out, at the time of the 1981 amendments, "Congress was aware of the regulation['s] definition, but did not enact any provisions to alter the definition." Pagel, Inc. v. CIR, 905 F.2d 1190, 1192 (8th Cir. 1990).

In addition, we agree with the Director that even if the term "claim" was ambiguous, the legislative history makes clear that it means an application for benefits. Because Congress was concerned that a "transfer of liability could prove too burdensome for the debt-laden Trust Fund, legislators specifically requested information on how many claims would transfer, which claims they were and what the cost would be" and relied on estimates that the amendment would transfer about 10,200 claims, valued at approximately $1.4 to $1.5 billion. Old Ben Coal Co., 826 F.2d at 694 (citing Hearings before the Subcomm. on Labor of the Senate Comm. on Labor and Human Resources, 97th Cong., 1st Sess. 31, 77 (1981)); see also Earl Patton Coal Co. v. Patton, 848 F.2d 668, 672 (6th Cir. 1988) ("Legislative history shows that the transfer of liability provisions of the 1981 Amendments reflect a congressional

intent to accommodate only a limited number of claims within estimated cost limitations.").  In any event, if any ambiguity existed, we would defer to DOL's reasonable interpretation of the statute it is charged with administering.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  DOL's transfer of liability regulation makes clear that unless a claim is subject to merger, 20 C.F.R. § 725.309(c), "the procedural history of each . . . claim must be considered separately to determine whether the claim is subject to the transfer of liability provisions."  Id. § 725.496(c).[2]

**Res Judicata**

Lovilia also argues that consideration of Harvey's 1990 claim is barred by the doctrine of res judicata.  The doctrine  "consist[s] of two preclusion concepts: 'issue preclusion' and 'claim preclusion.'"  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).  Under claim preclusion, "'a final judgment on the merits bars further claims by the parties or their privies based on the same cause of action.'"  United States v. Gurley, 43 F.3d 1188, 1195 (8th Cir. 1994) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)), cert. denied, 116 S. Ct. 73 (1995).  Under issue preclusion, or, as it is sometimes called collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, 'the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  Tyus v. Schoemehl, 93 F.3d 449, 453 (8th Cir. 1996) (quoting Restatement (Second) of Judgments § 27 (1982)), pet.

---

[2]Lovilia does not, and could not, argue that Harvey's 1990 claim merged with his 1973 claim.  See Tonelli v. Director, 878 F.2d 1083, 1087 (8th Cir. 1988) (under 20 C.F.R. § 725.309© "merger is available only when a previously denied claim, reopened for review under [30 U.S.C. § 945], and a second claim are pending at the same time").  Because the claim is not subject to merger, it is governed by the criteria of 20 C.F.R Part 718.  If the claim had been merged, "then the more liberal criteria of 20 C.F.R. 727 would have governed."  Tonelli, 878 F.2d at 1084 n.3.

<u>for cert. filed</u>, 65 U.S.L.W. 3539 (U.S. Jan. 27, 1997) (No. 96-1207).

Relying on claim preclusion, Lovilia argues that Harvey's 1990 claim was merely a "recycled" version of his 1973 claim and by "obtain[ing] a better lawyer and a friendlier ALJ, he finally was able to get benefits." Lovilia's Br. at 18, 31.[3]  Lovilia notes that in <u>Pittston Coal Group v. Sebben</u>, 488 U.S. 105, 123 (1988), the Supreme Court made clear that a black lung claimant may not "seek[] to avoid the bar of res judicata on the ground that the decision was wrong."

Contrary to Lovilia's assertion, Harvey was not attempting to relitigate the previous denials of earlier claims; rather, he was attempting to establish entitlement to benefits based on a change in conditions since the denials.  In such circumstances, res judicata does not bar his claim.  As the Fourth Circuit has stated, "res judicata does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times."  <u>Lisa Lee Mines v. Director</u>, 86 F.3d 1358, 1362 (4th Cir. 1996) (en banc) (quoting 3 A. Larson, <u>The Law of Workmen's Compensation</u>, § 79.72(f) (1989)), <u>cert. denied</u>, 117 S. Ct. 763 (1997).  This is so because "[t]he health of a human being is not susceptible to once-in-a-lifetime adjudication." <u>Id.</u>  The Third Circuit also has explained that although a black lung claimant is "precluded from collaterally attacking the prior denial of benefits, [he] may file a new claim, asserting that he is <u>now</u> eligible for benefits because he has become totally disabled due to coal miner's pneumoconiosis and that his disability occurred subsequent to the prior adjudication." <u>Labelle Processing Co. v. Swarrow</u>, 72 F.3d 308, 314

---

[3]Lovilia refers to the preclusive effect of an administrative determination in a subsequent administrative proceeding, rather than the preclusive effect of an administrative determination in a court proceeding.  <u>See</u> <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104, 106 (1991).

(3d Cir. 1995) (footnote omitted).  Simply stated, "[r]es judicata is not implicated when a miner brings a duplicate claim so long as the claimant demonstrates that his or her physical condition . . . has changed." Wyoming Fuel Co. v. Director, 90 F.3d 1502, 1510 (10th Cir. 1996).

Lovilia argues that these cases are wrongly decided because they are premised upon the erroneous assumption that pneumoconiosis -- which under the Act, 30 U.S.C. § 902(b), "means a chronic dust disease of the lung . . . arising out of coal mine employment"[4] -- is a progressive disease. For the same reason, Lovilia argues that 20 C.F.R. § 725.309(d), which, as indicated, allows for review of a subsequent claim after a denial of a previous claim if a miner demonstrates a "material change in conditions," violates res judicata.  Specifically, Lovilia contends that if a coal miner does not have pneumoconiosis or is not disabled by it at the time of an initial denial and thereafter does not return to work in the mines, he cannot develop the disease or become disabled by it, and thus could never establish a change in conditions.  We disagree.  Quoting Mullins v. Coal Co. v. Director, 484 U.S. 135, 151-52 (1987), this court has recognized that "'pneumoconiosis is a progressive and irreversible disease.'" Robinson v. Missouri Mining Co., 955 F.2d 1181, 1185 (8th Cir. 1992). Moreover, we have noted that "pneumoconiosis is a progressive disease which (according to medical testimony accepted by Congress) is difficult for miners and doctors to identify."  Newman v. Director, 745 F.2d 1162, 1164 (8th Cir. 1984).  Although Lovilia contends that the statements in our opinions, as well as in the opinions of the Supreme Court and other courts of appeals, see, e.g., Labelle Processing, 72 F.3d at 314 (listing cases "acknowleg[ing] that

_____

[4]"For purposes of this definition, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to . . . dust exposure in the coal mine employment."  20 C.F.R. § 718.201.

-8-

pneumoconiosis is a progressive and irreversible disease") are mere dicta, we disagree and will not revisit the issue.

**Material Change in Conditions**

We next address Lovilia's argument that the ALJ applied the wrong standard in determining that Harvey had demonstrated a "material change" in conditions. As previously indicated, 20 C.F.R. § 725.309(d), in relevant part, provides that "[i]f [an] earlier miner's claim has been finally denied, the later claim shall also be denied, on the grounds of the prior denial, unless the deputy director determines that there has been a material change in conditions." Neither the statute nor the regulations define "material change." In this case, the ALJ applied the Benefits Review Board's standard set forth in Spese v. Peabody Coal Co., 11 Black Lung Rep. 1-174, 1-176 (Ben. Rev. Bd. 1988) (per curiam), which holds that a claimant can establish a material change by submitting "evidence which is relevant and probative so that there is a reasonable probability that [it] would change the prior administrative result."

We do not address the validity of the Spese standard at length. The Director acknowledges that "[e]very circuit that has addressed the validity of the Spese standard has rejected it[,]" Wyoming Fuel Co. v. Director, 90 F.3d at 1508 (listing cases), and concedes it is wrong. In Wyoming Fuel, the court explained that appellate courts had rejected the Spese standard because it "violates principles of res judicata by permitting a claimant -- when attempting to show a material change -- to present evidence that merely shows the initial decision was in error, rather than limiting the evidence to that which shows that the claimant's condition has worsened since the previous denial." Id. at 1508-09.

Instead, the Director asks this court to adopt his "one-element" standard, as did the Third Circuit, Labelle Processing Co.

v. Swarrow, 72 F.3d at 318; Fourth Circuit, Lisa Lee Mines v. Director, 86 F.3d at 1363; and Sixth Circuit, Sharondale Corp. v. Ross, 42 F.3d 993, 998 (6th Cir. 1994). Under the Director's standard, an ALJ "making a material change determination must consider whether the weight of the new evidence of record (that is, the evidence developed since the denial of the earlier claim), submitted by all the parties, establishes at least one of the elements of entitlement previously adjudicated against the miner." Director's Br. at 32. In order to establish entitlement to black lung benefits, a claimant has to establish three elements: "[1] total disability; [2] that disability was caused 'at least in part by pneumoconiosis;' [3] that 'disability arose out of coal mine employment.'" Barnes v. ICO Corp., 31 F.3d 678, 680 (8th Cir. 1994) (quoting Mullins v. Director, 484 U.S. at 141). Moreover, "[t]he element in question must be one capable of change," for example, the existence of pneumoconiosis or total disability. Director's Br. at 33. If a claimant presents such evidence, "[a]bsent contrary evidence clearly demonstrating that the denial of the initial claim was a mistake," an inference of material change is "compelled" and an ALJ "must then consider whether all the evidence in the record, including the evidence predating the denial of the prior claim, supports an entitlement to benefits." Id.

The Director acknowledges that the Seventh Circuit, Sahara Coal Co. v. Office of Workers' Comp. Prog., 946 F.2d 554, 556 (7th Cir. 1991),[5] and Tenth Circuit, Wyoming Fuel Co. v. Director, 90

---

[5]In Sahara Coal, the Seventh Circuit held that "[a] material change in conditions means either that the miner did not have black lung disease at the time of first application but has since contracted it and become totally disabled by it, or that his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." 946 F.2d at 556. However, the court believed that "[i]t is not enough that the new application be supported by new evidence of disease or disability, because such evidence might show merely that the original denial was wrong." Id.

F.3d at 1511,[6] do not follow his "one-element" approach.  However, the Director reminds this court that "[w]hen, like in this case, the issue is whether the agency has erred in interpreting its own regulations, the Supreme Court has stated that: provided the agency's interpretation 'does not violate the Constitution or a federal statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  <u>Shalala v. St. Paul-Ramsey Med. Ctr.</u>, 50 F.3d 522, 527 (8th Cir. 1995) (quoting <u>Stinson v. United States</u>, 508 U.S. 36, 45 (1993)).  As the Director points out, this means we may not "'reject reasonable administrative interpretation even if another interpretation may also be reasonable.'"  <u>Id.</u> (quoting <u>Creighton Omaha Reg'l Health Care Corp. v. Bowen</u>, 822 F.2d 785, 789 (8th Cir. 1987)).

We first reject Lovilia's argument that the Director's one-element approach is not entitled to <u>Chevron</u> deference because it is inconsistent with his past positions.  "Of course the mere fact that an agency interpretation contradicts a prior agency position is not fatal."  <u>See</u> <u>Smiley v. Citibank</u>, 116 S. Ct. 1730, 1734 (1996).  Unless a change is arbitrary or capricious or an abuse of discretion, "change is not invalidating, since the whole point of <u>Chevron</u> is to leave the discretion provided by the ambiguities of a statute with the implementing agency." <u>Id.</u>  We also reject Lovilia's related argument that no deference is due because the Director's position is a mere litigating position.  In the circumstances of this case, the Director's "position is in no sense a 'post hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack."  <u>Auer v. Robbins</u>, 1997 WL 65558, *6 (Feb. 17, 1997) (quoting <u>Bowen v. Georgetown Univ.</u>

---

[6]In <u>Wyoming Fuel</u>, the Tenth Circuit held that "a claimant must prove for each element that actually was decided adversely to the claimant in the prior denial that there has been a material change in that condition since the prior claim was denied."  90 F.3d at 1511.

<u>Hosp.</u>, 488 U.S. 204, 212 (1988)).  "There is simply no reason to suspect that the [Director's] interpretation does not reflect the agency's fair and considered judgment on the matter in question."  <u>Id.</u>

Lovilia also contends that the Director's one-element standard is not entitled to deference because it violates section 7(c) Administrative Procedures Act (APA), 5 U.S.C. 556(d), which requires that "the proponent of a rule or order has the burden of proof."  Lovilia relies on <u>Director v. Greenwich Collieries</u>, 512 U.S. 267 (1994).  In <u>Greenwich Collieries</u>, the Supreme Court invalidated the DOL's "true doubt" rule, which provided that if the evidence was evenly balanced, a black lung claimant was entitled to benefits.  The Court held that the rule violated section 7(c) because it "shifted the burden of persuasion to the party opposing the benefits claim."  <u>Id.</u> at 269.

Here, Lovilia argues that the Director's one-element approach impermissibly shifts the burden of persuasion from the claimant to the coal company.  We disagree.  There is no dispute that the Director's interpretation creates a presumption--that is, it calls for an "inference of an ultimate fact from a predicate one."  <u>Mullins</u>, 484 U.S. at 157 n.30.  However, the presumption does not violate <u>Greenwich Collieries</u>.  In fact, in that case, the Court noted that "due to Congress' recognition that [black lung] claims . . . would be difficult to prove, claimants . . . benefit from certain statutory presumptions easing their burden."  512 U.S. at 280 (citing <u>e.g.</u> 30 U.S.C. § 921(c)).  In addition, the Court recognized that DOL's "solicitude for benefits claimants is reflected in the regulations adopting additional presumptions."  <u>Id.</u> (citing 20 C.F.R. §§ 718.301-718-306).  The Court indicated that the statutory and regulatory presumptions which ease a claimant's burden of production (<u>i.e.</u>, a party's obligation to come forward with evidence supporting its claim") do not violate the APA.  512 U.S. at 272.  The Court distinguished the true doubt rule

from those presumptions because the rule "attempt[ed] to go one step further" and "[i]n so doing," id. at 280, impermissibly shifted the burden of persuasion (i.e., "the notion that if the evidence is evenly balanced, the party that bears the burden of persuasion must lose"). Id. at 272. In this case, the Director's interpretation is akin to the statutory and regulatory presumptions which ease a black lung claimant's burden of production, but do not shift the burden of persuasion, as that term is used in Greenwich Collieries. See Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 373 (9th Cir. 1996) ("'Burdens of persuasion affect the outcomes only of cases in which the trier of fact thinks that plaintiff's and defendant's positions equiprobable.'") (quoting Bristow v. Drake St., Inc., 41 F.3d 345, 353 (7th Cir. 1994)).

Lovilia also argues that the Director's one-element standard violates due process. "Like all rules of evidence that permit an inference of an ultimate fact from a predicate one, black lung benefits presumptions rest on a judgment that the relationship between the ultimate and the predicate facts has a basis in the logic of common understanding." Mullins, 484 U.S. at 157 n.30. To satisfy due process concerns, however, "it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 28 (1976) (internal quotation omitted). Moreover, the Supreme Court has recognized that "[t]he process of making the determination of rationality is, by its nature, highly empirical, and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it." Id. (quotation omitted). We also keep in mind that "black lung presumptions, no less than any presumption established or recognized in law, are the product of both factual understandings and policy concerns." Mullins, 484 U.S. at 157.

In this case, Lovilia argues that the Director's standard violates due process because there is no rational connection between the fact presumed -- material change -- and the fact proved -- new evidence of disease or disability. However, Lovilia's argument is based on the premise that pneumoconiosis is not a progressive disease, a premise we have previously rejected. Lovilia also argues that the presumption is irrational because new evidence of disease or disability "might show merely that the original denial was wrong, and would thereby constitute an impermissible collateral attack on that denial." Sahara Coal, 946 F.2d at 556.

The Director counters that Lovilia misunderstands his standard. The Director asserts that his standard is faithful to the language of the regulation and to both claim and issue preclusion principles. The Director maintains that his standard ensures that a miner has experienced a material change in conditions and prevents an impermissible collateral attack on a previous denial by presuming that the initial denial was correct and requiring the claimant to establish an element of entitlement capable of change with new evidence. For example, the Director explains that if a miner was found not to have pneumoconiosis at the time of an earlier denial, and he thereafter establishes that he has the disease, in the absence of evidence showing the denial was a mistake, an inference of "material change" is not only permitted but "compelled." We agree. Cf. Mullins, 484 U.S at 158-59 ("Secretary's reading of the interim presumption's invocation burden satisfies both the purposes of the statute and the need for a logical connection between the proven fact and the presumed conclusion.") (footnote omitted).

The Director also asserts that his one-element standard promotes administrative and judicial efficiency, while at the same

time respects issue preclusion principles, which requires that a determination of an issue "must have been essential to the final judgment." Tyus, 93 F.3d at 453. In the context of a black lung claim, the Fourth Circuit explained, "[a] black lung claimant must prove every element of his claim. If he loses on one, or two, or three elements, the end result is the same: a denial." Lisa Lee Mine, 86 F.3d at 1363. Under issue preclusion principles, "holdings in the alternative, either of which independently would be sufficient to support the result . . . [are] not conclusive with respect to either issue standing alone." Id. (internal quotation omitted); see also Ritter v. Mount St. Mary's College, 814 F.2d 986, 993 (4th Cir.) ("where the court in the prior suit has determined two issues, either of which could independently support the result, then neither determination is considered essential to the judgment"), cert. denied, 484 U.S. 913 (1987). "For this reason, if [a black lung claimant] loses on more than one element, but only one is in fact a correct basis for denial, the law does not impose a duty upon him to file a meaningless appeal to 'correct' the erroneous alternative holdings." Lisa Lee Mines, 86 F.3d at 1363. Also, for this reason, the Director asserts that once a claimant establishes entitlement to one element with new evidence, he can establish entitlement to the remaining elements with old evidence.

As the Fourth Circuit noted, "[a] rational system would simultaneously account for the progressiveness of the disease, discourage useless appeals of alternate holdings, and require, at the threshold, a palpable basis to believe that conditions have changed over time." Lisa Lee Mines, 86 F.3d at 1364. We agree with the Fourth Circuit that "[t]he Director's 'one-element' approach accomplishes this difficult task." Id. at 1364-65. We thus reject Lovilia's due process argument.

Apparently realizing the weakness of its due process argument, Lovilia concedes that the presumption "might not be so bad if the

inference of changed conditions" was rebuttable. Lovilia's Reply Br. at 15. However, Lovilia asserts because the presumption is irrebuttable, it is "illegal," but does not explain why. An irrebuttable, or "conclusive presumption does, of course, foreclose the person against whom it is invoked from demonstrating, in a particularized proceeding, that applying the presumption to him will in fact not further the lawful governmental policy the presumption is designed to effectuate." Michael H. v. Gerald D., 491 U.S. 110, 120 (1989). Although the Director does not dispute that his standard creates a mandatory presumption, that is it "compels" rather than permits an inference, see First Dakota Nat. Bank v. St. Paul Fire & Marine Ins. Co., 2 F.3d 801, 813 (8th Cir. 1993), the Director argues it does not create an irrebuttable presumption because it allows an employer to dispute the presumed fact.

The Director is correct that as a technical matter his interpretation does not create an irrebuttable presumption. If, however, it did, or as a practical matter it does, it is not illegal. In Michael H., the Supreme Court recognized some confusion about its so-called "irrebuttable presumption cases" and explained that the "cases must ultimately be analyzed as calling into question not the adequacy of procedures but -- like our cases involving classifications framed in other terms, . . . -- the adequacy of the 'fit' between the classification and the policy that the classification serves." 491 U.S. at 121 (internal citation omitted). As just discussed, we find that there is an "adequate fit" between the Director's one-element standard and the finality and efficiency policies it is designed to serve. Moreover, as the Director notes, his interpretation serves the remedial purpose of the Act. See Labelle Processing, 72 F.3d. at 318.

Because we find that the Director's interpretation of 20 C.F.R. § 725.309(d) is reasonable, we join the Third, Fourth and

-16-

Sixth Circuits[7] in adopting the Director's one-element standard, and do not address the Seventh and Tenth Circuit approaches. Even if we found that they were also reasonable, we would be obligated to defer to the Director's standard.[8]

**Harvey's Claim**

Finally, we turn to Harvey's claim. Lovilia asserts that if this court adopts the Director's one-element standard, then we must remand so that the ALJ can apply the standard. The Director and Harvey contend that a remand is unnecessary because the evidence submitted in support of Harvey's 1990 claim, as a matter of law, not only demonstrates a material change in conditions, but, as the ALJ found, that, as of March 1, 1990, Harvey was totally disabled by pneumoconiosis and is thus entitled to benefits.

In support of his present claim for benefits, Harvey submitted a November 1992 letter by Dr. Gordon Arnott, in which the doctor stated:

> This man has worked in the coal mines for 32 years. During the last four years, he had considerable trouble with breathing. He has X-Ray findings of Black Lung Disease.
>
> Mr. Harvey requires breathing treatment, medication to dilate his lungs, inhaler treatments, and cortisone

---

[7]Like the Fourth Circuit in <u>Lisa Lee Mines</u>, "[w]e do not endorse . . . the closing paragraph of <u>Sharondale Corp.</u>, 42 F.3d at 999, where . . . the Sixth Circuit seems to have required consideration of evidence behind the earlier denial to determine whether it 'differ[s] qualitatively' from the new evidence." 86 F.3d at 1363 n.11.

[8]We note, however, our agreement with the Tenth Circuit's criticism of the Seventh Circuit's <u>Sahara Coal</u> standard, <u>Wyoming Fuel</u>, 90 F.3d at 1509-10, but for reasons stated above, we tend to disagree with the Tenth Circuit that the Director's interpretation of 20 C.F.R. § 725.309(d) is not entitled to deference.

> injections to help him with his breathing. He has been
> in the hospital with this condition on numerous occasions.
>
> He will continue to be disabled by this problem.

In addition, Harvey submitted medical records showing that Dr. Arnott had treated Harvey for breathing problems since 1988, including hospitalizations solely because of breathing problems or where his pulmonary condition was a significant diagnosis. For example, in August 1991, Harvey was admitted to the hospital after he came to the emergency room "severely short of breath and unable to function at all" and breathing treatments "were not real effective." He was again admitted in September 1991 for "marked shortness of breath, dyspnea, and wheezing."

In the circumstances of this case, we agree with the Director that a remand is unnecessary. As to material change, in this case, there is no question "whether the ALJ merely disagreed with the previous characterization of the strength of the evidence or whether [Harvey] indeed had shown the existence of a material change in his conditions since the earlier denial." Sharondale Corp., 42 F.3d at 999. In this case, the ALJ expressly found that the "hospital records dramatically demonstrate that [Harvey's] respiratory status has worsened substantially" since the previous denial, and that the evidence showed both the existence of pneumoconiosis and disability. ALJ order of July, 28, 1993 at 7. Thus, a remand for a material change finding "would serve no useful purpose." Olson v. Shalala, 48 F.3d 321, 323 (8th Cir. 1995); see also Lisa Lee Mines, 86 F.3d at 1362 (although ALJ applied Spese standard, remand unnecessary where claimant "ha[d] shown a stark change in condition").

As to entitlement, Lovilia challenges the ALJ's findings that Harvey had pneumoconiosis, that it arose out of coal mine employment, and that Harvey was totally disabled by the disease. We, like the Board, must uphold "an ALJ's findings if they are

-18-

rational, supported by substantial evidence, and consistent with the applicable law." Associated Elec. Coop., Inc. v. Hudson, 73 F.3d 845, 848 (8th Cir. 1996).

On appeal, Lovilia concedes that the "Act does not require positive X-rays[,]" id. at 848 (citing 20 C.F.R. § 718.202(b) ("[n]o claim for benefits shall be denied solely on the basis of a negative chest X-ray")). Indeed, the regulations provide that a determination of pneumoconiosis may be made "if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers from pneumoconiosis." 20 C.F.R. § 718.202(a)(4). However the doctor's finding must be "based on objective medical evidence such as blood gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories" and be "supported by a reasoned medical opinion." Id. In addition, a determination of "total disability may be [] found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents him" from performing his usual coal mine duties or comparable work. Id. § 718.204(c)(4).

Lovilia also recognizes that in evaluating medical opinions an ALJ may assign great weight to the opinion of a treating physician. Hudson, 73 F.3d at 848. However, Lovilia incorrectly asserts that there is no record evidence showing that Dr. Arnott was in fact Harvey's treating physician. As the ALJ noted, the medical records clearly show that Dr. Arnott had treated Harvey for breathing problems since 1988. "Because [Dr. Arnott] regularly treated [Harvey] for his breathing problems . . ., the ALJ had discretion to assign more weight to his opinion." Id. at 849.

Lovilia also incorrectly argues that the ALJ erred in concluding that Dr. Arnott's opinion was a reasoned medical

opinion. Although it is "up to the finder of fact to decide as a matter of credibility whether a physician's report is sufficiently documented and reasoned[,]" id. at 848, as Lovilia points out, an ALJ must view the report "in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based." Logsdon v. Director, 853 F.2d 613, 615 (8th Cir. 1988) (internal quotation omitted). However, this does not mean that an ALJ may "use the studies to form his or her own medical opinion and to substitute that opinion for the opinion of an expert." Id. (internal quotation omitted).

In this case, the ALJ did not err in concluding that Dr. Arnott's opinion was well-documented and reasoned. The ALJ evaluated the doctor's opinion against the medical records. In fact, the ALJ discounted Dr. Arnott's statement that Harvey had X-ray evidence of pneumoconiosis because no X-rays of record supported that statement. The ALJ also noted the objective medical tests did not conclusively demonstrate the existence of pneumoconiosis, but found that Dr. Arnott's opinion was nonetheless well-documented because it was supported by records of numerous hospitalizations and treatments for breathing problems, physical examinations, consideration of objective tests, and work history. In Campbell v. Director, 846 F.2d 502, 508 (8th Cir. 1988), we found that a doctor's report was a "documented opinion of a physician exercising reasoned medical judgment" even though it differed from equivocal test results. We explained that "Congress has recognized that tests and X-rays designed to detect pulmonary impairments caused by the inhalation of coal dust are far from infallible." Id (internal quotation omitted). See also Ware v. Director, 814 F.2d 514, 517 (8th Cir. 1987) (equivocal test results did not impeach doctor's diagnosis of pneumoconiosis based on claimant's "medical history, employment history, and symptoms").

Also, contrary to Lovilia's arguments, the ALJ did not ignore the other medical evidence of record. The ALJ noted the earlier

medical opinions indicated that Harvey did not have pneumoconiosis, but found they were not relevant since they did not address Harvey's condition at the time of the administrative hearing. See Robinson v. Missouri Mining, 955 F.2d at 1184 ("[a]s pneumoconiosis is a progressive disease," the ALJ should consider "temporal proximity . . . in determining which of two different medical opinions to credit"). The ALJ also noted that in 1987 Dr. Des Camps had reported that Harvey had obstructive lung disease due to coal dust exposure and cigarette smoking and that in April 1990 Dr. B. C. Hillyer diagnosed Harvey as having moderate chronic obstructive pulmonary disease due to cigarette smoking. Contrary to Lovilia's suggestion, these reports are not inconsistent with the ALJ's finding that as of March 1990 Harvey had pneumoconiosis and that it "arose <u>at least in part</u> out of coal mine employment." 20 C.F.R. § 718.203(a)(emphasis added).[9] Cf. Hudson, 73 F.3d at 849 (doctor's opinion that symptoms consistent with heart disease and smoking did "not contradict ALJ's separate findings that [claimant] suffered from pneumoconiosis and that it was a contributing cause of his disability"); Consolidation Coal Co. v. Hage, 908 F.2d 393, 394 (8th Cir. 1990) (employer's "cigarette defense" insufficient to rebut statutory presumption of existence of pneumoconiosis).

Accordingly, we affirm the Board's award of black lung benefits.

---

[9] "Because [Harvey] worked as a miner for more than 10 years, there is a rebuttable presumption that the pneumoconiosis arose out of coal mine employment." Hudson, 73 F.3d at 848 (citing 20 C.F.R. § 718.203(b). As the ALJ found, no contrary evidence rebuts this presumption.

A true copy.

Attest:

Clerk, U.S. Court of Appeals, Eighth Circuit.